**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT JACKSON**

_____

| | |
|---|---|
| ) | |
| **IN THE MATTER OF:** ) | Hardeman County Circuit Court |
| **JAMIE MURPHY (DOB 7/12/87)** ) | No. 8698 |
| **JANET MURPHY (DOB 4/24/89)** ) | |
| **JHANAID MURPHY (DOB 2/23/91)** ) | |
| ) | |
| ) | C.A. No. 02A01-9610-CV-00259 |
| ) | |
| ) | |

FILED

**March 26, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Hardeman County at Bolivar
**Honorable Jon Kerry Blackwood, Judge**

**Patricia L. Penn**, Penn & Associates, Memphis, Tennessee
Attorney for Petitioners/Appellants Jesse and Geneva Murphy.

**Karen T. Fleet**, Bolivar, Tennessee
Attorney for Respondents/Appellees Edward Bowers, Jr. and Mae Lena Bowers.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

This is a child custody case involving three biological children of James Murphy and Valerie Carter. They are: Jamie Murphy, born July 12, 1987; Janet Murphy, born April 24, 1989; and Jhanaid Murphy, born February 23, 1991. Appellants are their paternal grandfather and step-grandmother, Jessie and Geneva Murphy. The appellee, Edward Bowers, Jr., is a first cousin to James Murphy and Appellee Mae Lena Bowers is his wife. Appellants have appealed from an order entered by the circuit court dismissing their appeal and reinstating the judgment of the juvenile court which found that no material misrepresentations were made by the appellees at the July 1995 custody hearing to affect that court's decision to award temporary custody of Jamie and Janet to appellants and temporary custody of Jhanaid to the appellees. For the reasons set forth below, we affirm.

This matter began in July 1992, when the Bowers filed a petition in the juvenile court seeking custody of Jamie and Jhanaid. The juvenile court granted them temporary custody after determining that the two children were "dependent and neglected" as defined by statute (T.C.A. § 37-1-103(b)(10)) inasmuch as their father was incarcerated in a correctional facility in Missouri and their mother was suffering from drug addiction.[1] The court reserved a final hearing upon completion of a home study investigation.

On October 15, 1992, the Bowers filed a petition seeking custody of Janet. On October 27, 1992, Jessie Murphy filed a petition with the juvenile court seeking custody of all three children. The petition alleged that their natural mother was incarcerated in Missouri for drug related crimes; that Jhanaid had resided with the Bowers since she was 3 months old; and that the other two children had resided with their mother until February 1992. It was asserted that since February, however, Jamie and Janet had resided with the appellants at their "mother's request." The petition alleged that Janet had since lived with the appellants without interruption and that Jamie had resided with them until April 1992 when he began living with the Bowers "for visiting purposes only." In December 1992, the juvenile court entered an order awarding temporary custody of Janet to Appellant Murphy, with visitation rights extended to him regarding the other two children, who remained in the Bowers' custody. No visitation privileges were accorded the Bowers regarding Janet. All other matters were reserved until a final hearing. Thereafter, in June 1993, the juvenile

---

[1]The petition described the natural mother as a "street person" living in St. Louis.

court entered an order awarding temporary custody of Jamie and Janet to Jessie Murphy and temporary custody of Jhanaid to the Bowers. Visitation was extended to each of the parties.

In March 1995, Appellants filed a petition to modify[2] requesting that they be awarded permanent custody of all three children. The Bowers responded by also seeking permanent custody of the children. Prior to a hearing, the court appointed a guardian ad litem on the children's behalf. The court conducted a hearing on July 26, 1995 resulting in an award of temporary custody of Jamie and Janet to the appellants. Temporary custody of Jhanaid remained with the Bowers. The court's order was entered August 7, 1995.[3] No appeal was taken by either party.

On September 6, 1995, Appellants filed a "Petition to Modify Order Awarding

_____

[2]Rule 34 of the Rules of Juvenile Procedure pertains to relief from judgments or orders - modification and vacation of orders." It provides, as here relevant:

> **(b) Extraordinary Relief**. An order of the court shall be vacated if it appears that it was obtained by fraud or mistake sufficient therefor in a civil action, or the court lacked jurisdiction over a necessary party or of the subject matter, or newly discovered evidence so requires.

> **(c) Modification for Best Interest of Child**. An order of the court may also be modified or vacated on the ground that changed circumstances so require in the best interest of the child, . . .

> **(d) Petitions to Modify or Vacate Orders**. Any party to the proceeding, the probation officer, or any other person having supervision or legal custody of or an interest in the child may petition the court for the relief provided in subsections (b) and (c) of this rule. The petition shall be styled "Petition to Vacate Order" or "Petition to Modify Order," as the case may be, shall set forth in concise language the grounds upon which the relief is requested, . . .

[3]In determining custody, the court reasoned as follows:

> [T]he Court finds that the unification of these three children is of utmost importance to the Court and in the best interests of the children, and that every reasonable effort should be made by all parties to foster the relationship of brother and sisters between them. However, the Court further finds that due to the tender ages of the children, ranging from four years to eight years, most importantly to the children is the relationship of parent and child. The Bowers have had Jhanaid residing with them in their home since she was an infant some six months of age and the bond of parent and child is strong. The Murphys have had Jamie and Janet residing with them in their home as brother and sister, and, without question, a strong bond exists between them both as parent and child and as brother and sister. Jamie also resided in the home of the Bowers for several months, and the record reflects that he has done well in both homes.

> . . . .

> This Court is of the opinion and belief that serious emotional harm could result to Janet or Jhanaid if either child were removed from their present homes.

Custody and Petition to Hear Additional Evidence" requesting the court to hear additional evidence not presented at the July 26, 1995 hearing and to modify its order to award custody of Jhanaid to them. The petition alleged that the Murphys were not aware of the existence of their grandchildren until 1992, at which time the natural parents expressed their desires that the Murphys have custody of the children; that they were aware of "certain intentional misrepresentations" made by the Bowers at the July hearing which were designed to influence the court's decision, the proof of which should be admitted to protect the welfare of Jhanaid Murphy; that it was in the best interest and welfare of Jhanaid to be in the appellants' custody and to reside with her other siblings; that the court's decision was based upon the report of the guardian ad litem "which restricts the considerations of the child's best interest test in awarding permanent custody of [Jhanaid] and in permanently separating her from her . . . siblings"; that the list of relevant factors identified at T.C.A. § 36-6-105 was not an exhaustive one and the court's consideration was not to be limited thereby; and, finally, that "critical evidence" was available to the court, but could be obtained only upon the court's enforcement of its July 10, 1995 order which required each of the parties and minor children to undergo psychological evaluations with the completed reports submitted to the court.

By order entered September 14, 1995, the juvenile court held, that of the matters presented in the appellants' petition to modify, it had "heard, considered and ruled" on all but the allegation that intentional misrepresentations were made by the Bowers at the July 1995 hearing.[4] The court scheduled a hearing as to this issue and ordered Appellants to file an amended petition specifically setting forth the alleged misrepresentations, when they were made and by whom, by September 20, 1995. If not filed by said date, the court ordered that the petition be dismissed. On October 6, 1995, the court entered an order dismissing Appellants' petition to modify after they failed to file an amended petition or appear at the scheduled hearing, though the record reflects that

_____

[4]The court's order further states that its decision was not based solely on the guardian ad litem's report, "but same was considered along with the evidence presented, testimony of witnesses, statements of counsel, [and] the entire record . . . ." The court found that the guardian ad litem's report was not rebutted by either party at the hearing and the court did not consider it a matter in dispute. The court denied ever awarding "permanent" custody to either party or "permanently" separating them. The court acknowledged that it had previously on its own motion requested the parties' and children to undergo psychological evaluations, but had thereafter waived same after the court was advised by the parties that the evaluations would be too expensive for them. The court, however, did not prohibit the parties from proceeding on their own with such testing and to present evidence thereof at the hearing. At the hearing, the court was informed that two of the children had undergone professional counseling, but the court noted that the testimonies of counselors was not presented.

the Bowers did attend.

On October 12, Appellants filed a motion to set aside the order on the basis that neither they nor their counsel had received any notice of the scheduled hearing or order requiring that an amended petition be filed. On January 10, 1996, the appellants filed an amended petition setting forth the specific intentional misrepresentations allegedly made by the Bowers as follows: (1) that Mrs. Bowers had represented herself to medical care givers as the "mother" of the children; (2) that Mr. Bowers was not currently an employee of the railroad company as was his testimony at the July 1995 hearing and was, thus, attempting to misrepresent his financial ability to provide for the child in his custody; (3) that a court reporter was present at the July 1995 hearing and snapshots were provided by the appellants, but that on January 8, 1996, neither a transcript of the case nor the snapshots were included within the court's file on the case; and (4) that "as a restatement from their original Petitions . . . critical evidence [was] available to the Court that . . . Jamie and Janet fear[ed] going to the [Bowers' home] and exhibit[ed] adverse affects each time [they visited in the Bowers' home]," but that such critical evidence could only be obtained upon enforcement of the court's prior order requiring all parties and children to undergo psychological evaluations. By response, the Bowers denied that the court's order was in any way obtained by fraud or mistake, that any newly discovered evidence existed or that there were changed circumstances requiring modification of the court's prior order.

On March 28, 1996, Appellants filed a second "Petition to Modify Order Awarding Custody and Petition to Hear Additional Evidence." Appellants requested the court to reconsider "its decision to separate these minor children and to place the youngest . . . in a foster home and to consider additional evidence . . . ." Attached thereto was the deposition of a clinical psychologist who had begun evaluations on the children. Appellants alleged that "some form of abuse" was occurring in the Bowers' home. It was further alleged, "as a restatement of their original petitions," that Jamie and Janet feared going to the Bowers' home and exhibited adverse effects after visitation and that Jhanaid was developmentally delayed. Appellants once again urged the court to enforce its prior order requiring psychological evaluations of all parties and children in order that "critical evidence" pertaining thereto could be obtained.

On April 4, 1996, the juvenile court entered an order ruling as follows:

> Upon the filing of the Petition on September 6, 1995, the Court reviewed same and found many of the matters addressed therein had been decided by the Court after an extensive hearing on July 26, 1995, and an Order was entered thereon on August 7, 1995, and that the only matter to be considered by the Court was regarding the allegations of misrepresentations . . . . The Court entered an Order on September 14, 1995, directed the Petitioners to file an Amended Petition setting forth the alleged misrepresentations, and limiting any further hearing to the issue of misrepresentations to the Court.

> The Petition, therefore, came on for hearing on the 7th day of February, . . . the Court having heard testimony of witnesses, examined the evidence, and being sufficiently advised finds that **NO MATERIAL MISREPRESENTATIONS** were made to the Court at the hearing on July 26, 1995, to substantiate a modification of this Court's Order of August 7, 1995, . . . the Petition should be denied.

On April 11, the Bowers responded to the appellants' petition to modify filed March 28, 1996 and denied all material allegations thereto. The Bowers requested that the matter be summarily dismissed as the issues raised had been previously ruled upon and were, therefore, *res judicata*. This same day, Appellants appealed to the circuit court from the juvenile court's judgment rendered April 4, 1996.[5] A hearing was conducted in the circuit court on May 3 with the court ultimately dismissing the appeal and reinstating the judgment of the juvenile court by order entered May 6.

After Appellants had filed a notice of appeal to this Court, the circuit court entered a separate order on October 16, granting Appellees' motion to modify the transcript to be submitted to this Court on grounds that it contained certain evidentiary matters that would be improperly included in the record on appeal. Specifically, the appellees' "objections to transcript as filed and motion to modify transcript," asserted that a transcript of the July 26, 1995 hearing would be inappropriately included because the appellants had filed no appeal therefrom and the transcript was not considered by the circuit court in its ruling on May 6. In granting the motion and refusing to

---

[5]On April 12, the juvenile court entered an order denying the appellants' petition to modify, filed March 28, on the basis that it presented "the same issues" previously heard and decided by the court and that no new or additional proof had been shown to substantiate a material change in circumstances since entry of its order on April 4; thus, rendering its April 4 judgment final for purposes of appeal.

certify the record as submitted by Appellants, the circuit court's order specifically states that at the hearing on May 3, the court "considered only the issues raised in the February 7, 1996, hearing before the Juvenile Court . . . relative to alleged misrepresentations made by the Appellees in affirming the decision of the Juvenile Court Judge and dismissing the appeal [therefrom]." The court ruled that the record on appeal should consist solely of the transcript of the May 3 hearing and any exhibits thereto.

Appellants raise the following issues on appeal:

> 1. Whether the Circuit Court of Hardeman County erred in denying a trial *de novo* pursuant to T.C.A. § 37-1-159.
>
> 2. Whether the juvenile Court of Hardeman County erred in holding that the two children (Jamie and Jhanaid) were dependent and neglected children within the meaning of T.C.A. § 37-1-10[2] (b)[(12)]) without giving proper notice to either the parents or grandparents of the said children.
>
> 3. Whether the Juvenile Court of Hardeman County lacked jurisdiction pursuant to T.C.A. § 37-1-101(4) in so far as the mother, the father, and the paternal grandparents of these children were not given notice and due process, were thus denied a fair hearing and their Constitutional and other legal rights were not recognized, were denied, and were [unenforced].

We first consider the issues pertaining to whether the juvenile court lacked jurisdiction to entertain this matter for failure to give proper notice to either the appellants or the natural parents of the children regarding the hearings, thus denying their due process rights and failing to comply with the provisions of T.C.A. § 37-1-101(4). Chapter 1 of Title 37 addresses "juvenile courts and proceedings." Section 37-1-101(a)(4) provides:

> This part shall be construed to effectuate the following public purposes:
>
> . . . .
>
> Provide a simple judicial procedure through which this part is executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced;

The record indicates that the order of temporary custody determining Jamie and

Jhanaid "dependent and neglected" was entered August 3, 1992. The record includes a notarized "Consent For Adoption By Natural Father" signed by James Murphy on December 12, 1991 wherein he agrees to the "adoption" of his three children by the Bowers. A similar notarized handwritten letter, signed by Valerie Carter, "acknowledg[ing] the voluntary transfer of temporary custody" of the children to the Bowers is also in the record. It is dated February 18, 1992. The record further evidences a letter from the juvenile court addressed to both James Murphy and Ms. Carter, dated November 2, 1992, informing them of the parties' respective petitions for temporary custody of their children. The letter informs them of their right to respond to the petitions[6] and further states that a hearing date had not yet been scheduled so as to afford them time to respond. James Murphy's "Answer to Petition for Custody" was entered by the juvenile court on November 23, 1992. A similar "Answer" by Ms. Carter was filed with the court on December 14, 1992.

We conclude that the record does not indicate a denial of the due process rights afforded the natural parents of these children. Appellants have been active participants in the proceedings below, having filed numerous petitions regarding this matter. We hold that any due process rights afforded them under the circumstances were met. Hence, it is the holding of this Court that the juvenile court had jurisdiction to entertain the issue of temporary custody of these children.

We next address the issue of whether the hearing before the circuit court failed to comply with the requirements of T.C.A. § 37-1-159. At the time of the appeal to circuit court, this code section read as follows, in part pertinent:[7]

> (a) The juvenile court shall be a court of record and any appeal from any final order or judgment in a delinquency proceeding, unruly child proceeding, or dependent and neglect proceeding, filed under this chapter, except a proceeding pursuant to § 37-1-134, may be made to the circuit court which shall hear the testimony of witnesses and try the case de novo. The appeal shall be perfected within ten (10) days, excluding nonjudicial days, following the juvenile court's disposition.

---

[6]Appellant Murphy's first petition for custody was filed on October 27, 1992.

[7]This section was amended in June 1997 to allow an appeal from the judgment of the juvenile court to be made to either the criminal or circuit courts.

Appellants are correct that § 37-1-159 requires the circuit court to "hear the testimonies of witnesses and try the case *de novo*." They argue that the circuit court failed in this respect by refusing to hear any other than that which pertained to the Bowers' alleged misrepresentations. They contend, "[t]he Circuit Court never heard any issues of jurisdiction, refused to hear allegations of abuse, or any matters pertaining to substantive, jurisdictional or procedural issues . . . ." We believe Appellants' argument must fail for two reasons: First, no appeal was ever made to the circuit court from the juvenile court's August 7, 1995 order pertaining to the hearing conducted on July 26, which would have required the circuit court to review the entire custody hearing "*de novo*" and, secondly, the judgment from which the appellants did timely appeal to circuit court was specifically from the juvenile court's April 4 ruling,[8] which expressly considered only the allegations of misrepresentations, after determining that all other issues raised in Appellants' petition to modify had been previously decided. The record includes a transcript of the hearing conducted by the circuit court on May 3, 1996 on the limited issue alleging misrepresentations by the Bowers. The fact that this was the only issue considered by the court is made abundantly clear by its order of October 16. As the circuit court conducted a *de novo* hearing on the only issue before it, we find no error by the court in this regard.

The judgment of the trial court is affirmed and this cause remanded for any further necessary proceedings. Costs are assessed against the appellants, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)

_____

[8]The notice of appeal specifically states that Appellants are appealing to the circuit court "from the final judgment entered . . . on the 4th day of April, 1996."